IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


MARTIN L. HOLLOMAN,

           **Petitioner,**

   **v.**                     **CASE NO. 2:08-CV-441**
                                    **JUDGE SARGUS**
                                    **MAGISTRATE JUDGE KING**

**DEB TIMMERMAN-COOPER, Warden,**

           **Respondent.**


## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus
pursuant to 28 U.S.C. 2254. This matter is before the Court on the instant petition, Doc. No.
3, respondent's return of writ, Doc. No. 9, and the exhibits of the parties. For the reasons
that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural
history of this case as follows:

> On April 25, 2005, defendant was indicted on one count of
> aggravated burglary, a violation of R.C. 2911.11 and a felony of
> the first degree. The indictment alleged that defendant broke
> into an apartment and inflicted, attempted or threatened to
> inflict physical harm to the occupant of the apartment. Counsel
> was appointed to represent defendant. Subsequently, the trial
> court granted defendant's motion to represent himself.
> Defendant represented himself at the trial in this case, which
> was held in late October and early November 2005.

Teresa Q. Johnson testified at trial as follows. Ms. Johnson met defendant in September 2004 at a dance for persons recovering from alcohol and drug abuse. She saw him again at another dance at the same facility a few weeks later. On Christmas Eve of that year, Ms. Johnson picked up defendant at a facility called the "Bell Center," and they went on a date. The two got together two or three times in January and more frequently in February 2005. At that point in time, Ms. Johnson considered she and defendant to be dating. In early March 2005, the two traveled together to New York City for shopping and sightseeing. Ms. Johnson financed the trip. Shortly after the New York City trip, Ms. Johnson decided to end the relationship and informed defendant of that decision. At her apartment, Ms. Johnson explained to defendant that she thought she was too old for him, and that she was uncomfortable with his "interrogations" and "impromptu" visits to her apartment. (Tr. Vol.I, 102.) Upon learning of her decision, defendant cried, fell on the floor, and said how he loved her. He eventually left the apartment.

A few days later, defendant appeared at the gym where Ms. Johnson exercises and told her that his work hours had changed. The two went to her apartment to talk, and he asked her for "lunch money." (Tr. Vol.I, 104.) Ms. Johnson gave defendant $20 and he left. Later that night, defendant came back, and Ms. Johnson let him sleep at the apartment. She also let him sleep over the following night. The next morning Ms. Johnson told defendant that she did not want to see him anymore. That evening, she heard scratches at the door to her apartment. It was defendant, and he was "balled up." (Tr. Vol.I, 105.) She let him stay that evening and in the morning she told him to leave. She did not see him again until April 12, 2005.

Late at night, on April 12, 2005, defendant arrived at Ms. Johnson's apartment. He knocked on her door and windows, screaming at her. She called the police. The police arrived at the apartment and she informed them that she did not want defendant at her apartment. The police spoke with defendant, and he left the area. On the evening of April 13, 2005, defendant again arrived at Ms. Johnson's apartment, knocking

on the door and windows and screaming at her. She did not respond to defendant and called the police. The police spoke with defendant and he left.

The next day, Ms. Johnson left her apartment to address some business concerns and returned to her apartment at approximately 5 p.m. Defendant was waiting for her on the steps leading to her apartment. Defendant approached her and said that he wanted to repay her money, but he had to go to the bank to get the money. He also told her that he had relapsed. Ms. Johnson walked past him, entered her apartment, locked the door, and called the police. The police arrived and spoke with defendant, and he apparently left the area.

Ms. Johnson wanted to leave the apartment, but she needed to send an email. While working on her computer, Ms. Johnson heard someone coming up the steps. Defendant kicked in the apartment door, Ms. Johnson jumped from her computer, he hit her in the right eye and she fell back and hurt her hip. Defendant ran to her bedroom and took her purse. The two "tussled over the purse," he hit her again, she again fell back, and he ran out of the apartment with the purse. (Tr. Vol.I, 113.) Inside the purse was Ms. Johnson's wallet, which contained cash, a debit card, and other items. Ms. Johnson attempted to run after defendant, but he was able to escape and run down the apartment stairs and down an alley. Ms. Johnson called 911. The recording of the 911 call was played for the jury. In that call, Ms. Johnson told the 911 dispatcher, in part, "He beat me" and "I need an ambulance." As a result of the incident, Ms. Johnson suffered a black eye, a bruised hip, and a sore knee.

Columbus Police Officer Sean Wyke testified that he arrived at the apartment within two minutes after he was dispatched to the scene. Upon arrival, he noticed that the door had been kicked open and the doorframe was broken. He observed two footprints on the door. Officer Wyke described Ms. Johnson as "very upset." (Tr. Vol.I, 57.) Officer Wyke testified that it appeared as though a struggle had occurred within the apartment. Officer Wyke did not recall observing any visible injury to Ms. Johnson's face. Another responding Columbus

Police Officer, Steve Nace, who earlier that day had been at Ms. Johnson's apartment to urge defendant to leave, testified that when he arrived paramedics were talking with Ms. Johnson. Officer Nace testified that Ms. Johnson was "crying, shaken, kind of trembling voice." (Tr. Vol.II, 25.) He further testified that he did not notice any signs of physical injury to Ms. Johnson, but added that the two paramedics standing next to her were partially obstructing his view of her.

Detective Michael Sweet also responded to the apartment on April 14, 2004, after several of the police officers already had arrived. He testified that Ms. Johnson was "traumatized," "shaking," and having difficulty making coherent statements. (Tr. Vol.II, 61.) Later that evening, Detective Sweet talked with Ms. Johnson. At trial, the prosecutor asked Detective Sweet whether Ms. Johnson told him what had occurred that evening, and defendant objected to that question on the basis of hearsay. The trial court allowed the testimony. Thereupon, Detective Sweet testified regarding what Ms. Johnson told him relating to what had occurred that evening. When asked whether he noticed any marks or injuries on Ms. Johnson's person, Detective Sweet testified that "[t]here was some minor redness about [her] face," and added that "other than that, she didn't seem physically injured." (Tr. Vol.II, 63.) Detective Sweet further testified that the redness "was consistent with some type of confrontation." (Tr. Vol.II, 72 .)

Columbus Division of Fire Firefighter and Paramedic Terone Gordon was dispatched to Ms. Johnson's apartment in response to a reported injury. Paramedic Gordon noticed that the door to the apartment was lying on the floor, and he described Ms. Johnson as "upset and crying." (Tr. Vol.I, 66.) He testified that one of Ms. Johnson's cheeks was red "and maybe a little swollen." (Tr. Vol.I, 72.)

After the incident, Ms. Johnson stayed at the home of her friend, Barbara Merritt. Ms. Merritt testified that Ms. Johnson appeared "very nervous" and that Ms. Johnson's face was "bruised and puffy" and "she was moving kind of slow." (Tr. Vol .I, 179, 182.) The next day, Ms. Johnson returned to the area of her apartment with Ms. Merritt. As she was previously

advised, Ms. Johnson contacted the police before approaching the apartment. Columbus Police Officer Teresa Jarrell was dispatched to the scene. Ms. Johnson saw defendant approaching the apartment complex, and she informed Officer Jarrell of defendant's presence in the area. Officer Jarrell arrested defendant. At the time of his arrest, defendant was carrying a backpack that contained items that belonged to Ms. Johnson, including her identification and debit card.FN1 Officer Jarrell testified that, even though she physically saw Ms. Johnson that day, she did not take notice of whether Ms. Johnson had a black eye or any bruising on her face.

> FN1. Evidence at trial revealed that defendant attempted to use Ms. Johnson's bank card to withdraw cash from an automated-teller machine before he was arrested in the area of Ms. Johnson's apartment.

Claudia Shine, Ms. Johnson's neighbor who was called as a witness on behalf of the defendant, testified that Ms. Johnson told her that defendant kicked, punched, and tried to kill her.

Defendant testified on his own behalf. Defendant described the circumstances of how he met Ms. Johnson, while he was at the Bell Center, as well as the progression of their dating relationship. He testified regarding their trip to New York City. He testified that, after returning from New York City, defendant introduced Ms. Johnson to a realtor so they could look for a house. At some point, defendant moved out of the Bell Center and stayed at Ms. Johnson's apartment. Defendant understood that he could stay at her apartment until he found other arrangements. The next day, defendant worked the late shift, and in the following morning he went out with a coworker to drink beers and liquor. Before it was time for him to work that evening, he went to Ms. Johnson's apartment. Ms. Johnson let him in the apartment and scolded him for relapsing. He slept at her apartment that night, and the next day he went to work. Defendant was arrested on his way to work for his failure to report to the Bell Center. He was in jail for approximately two weeks until his parole officer lifted the

parole holder. The day of his release he went to Ms. Johnson's apartment and she called the police. According to defendant, the police told him that Ms. Johnson no longer wanted to be in a relationship with him. The next night he went drinking and again went to Ms. Johnson's apartment. Again, Ms. Johnson called the police and he left.

Defendant testified that he called Ms. Johnson on April 14, 2005, and asked her why she had the police inform him that she did not want to be with him anymore. He wanted to talk to her and told her he would go to her apartment. He sat on the steps leading to her apartment and waited for her. When Ms. Johnson arrived, the two went up to the apartment and talked. Ms. Johnson informed him that she wanted to end their relationship. Defendant took trash from Ms. Johnson's apartment to the dumpster in the parking lot. He intended to return to the apartment to retrieve his belongings and leave. However, Ms. Johnson had locked the door. Defendant banged on the door and Ms. Johnson called the police. Once a police officer arrived, defendant left the area. Defendant testified that he returned and "kicked the door in." (Tr. Vol.II, 130.) According to defendant's testimony, Ms. Johnson "lunged" at him, and he "dodged" her on his way to the bedroom where he grabbed his "Eddie Bauer bag." (Tr. Vol.II, 130-131.) He returned to the living room where Ms. Johnson hung up the telephone, again lunged at him, and grabbed at the bag. Believing that the police had been contacted and were on their way, he fled the apartment and ran down the alley. In his testimony, defendant denied hitting Ms. Johnson or attempting to harm her. In addition, he testified that he was surprised to find her belongings in the bag he had taken, but he admitted to keeping the money in the bag and attempting to use her bank card.

At the conclusion of trial, the jury found defendant guilty of aggravated burglary, as charged in the indictment. The trial court held a sentencing hearing on December 5, 2005, and sentenced defendant to six years in prison.

*State v. Holloman,* 2007 WL 612320 (Ohio App. 10th Dist. March 1, 2007).  Petitioner filed a

timely appeal, in which he asserted the following assignments of error:

> 1. The verdict of guilty of aggravated burglary was against the manifest weight of the evidence.

> 2. The trial court erred in allowing a witness for the State of Ohio to testify about the extrajudicial statements of Teresa Q. Johnson which was offered for the truth of the matter asserted.

*See id.* On March 1, 2007, the appellate court affirmed the trial court's judgment. *Id.*

Petitioner filed a timely appeal to the Ohio Supreme Court, in which he asserted the following propositions of law:

> 1. Consistent with Sixth Amendment to the United States Constitution and the principals of *Apprendi v. New Jersey* (2000),d 530 U.S. 466... and *Blakely v. Washington* (2004), 542 U.S. 296... and *State v. Foster* (Ohio 2006), 845 N.E.2d 470, the Appellant's six year sentence imposed by the trial court pursuant to R.C. 2929.19(B)(2)(a)(b) and (c)(d) and (e) findings and reasons is contrary to law and unconstitutional.

> 2. The Appellant's verdict of guilty of Aggravated Burglary was against the manifest weight of the evidence.

> 3. When appellate counsel makes numerous serious errors in handling a criminal appellant's one and only direct appeal, including failing to raise a meritorious sentencing issue, appellate counsel provides constitutionally ineffective assistance of counsel, and the defendant is entitled to a new direct appeal, with effective representation....

*Exhibit 11 to Return of Writ.* On June 20, 2007, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. *Exhibit 13 to Return of Writ.*

On May 11, 2007, and July 31, 2007, petitioner filed an application and amended

application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted that

he had been denied the effective assistance of counsel because his attorney failed to raise

on appeal the following claims:

> 1. The trial court committed reversible error by imposing restitution on the defendant at sentencing in the amount of three hundred dollars without any evidence of actual damages to the victim to determine actual losses suffered by the victim.
>
> 2. The Appellant's constitutional rights to the effective assistance of counsel during sentencing was violated by counsel's failure to request pursuant to R.C. 2929.11(B) the trial court to conduct a consistency of sentencing analysis with similar aggravated burglary cases.
>
> 3. The Appellant's due process and equal protection rights were violated when the trial court disregarded the statutory requirement of R.C. 2929.11(B) consistency of sentencing analysis for his sentence to be consistent with sentences imposed for similar crimes committed by similar offenders, making the attempted sentence a nullity or void.

*See Exhibit 19 to Return of Writ.* On January 29, 2008, the appellate court denied petitioner's

Rule 26(B) application. *Id.* Petitioner filed a timely appeal to the Ohio Supreme Court.

*Exhibits 20, 21 to Return of Writ.* On April 23, 2008, the Ohio Supreme Court dismissed the

appeal. *Exhibit 22 to Return of Writ.*

Petitioner also pursued post conviction relief.

> After appellant filed his direct appeal, he filed in the trial court a petition for post-conviction relief pursuant to R.C. 2953.21. In his petition, appellant claimed that his constitutional rights had been violated by the ineffective assistance of his stand-by trial counsel, and by the State's suppression of favorable evidence and withholding of a potential witness's name. The trial court denied appellant's petition without a hearing.

*State v. Holloman*, 2006 WL 3743105 (Ohio App. 10th Dist. December 21, 2006). Petitioner

filed a timely appeal, in which he asserted the following assignment of error:

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR
> AND ABUSED ITS DISCRETION BY DENYING
> APPELLANT'S CLAIM FOR POSTCONVICTION RELIEF AS
> NOT HAVING A PRIMA FACIE CLAIM ASSERTING
> PROSECUTORIAL MISCONDUCT WITHOUT
> CONDUCTING AN EVIDENTIARY HEARING AS
> REQUIRED BY R.C. 2953.21(E).

*See id.* On December 21, 2006, the appellate court affirmed the trial court's judgment. *Id.*

On February 6, 2007, the appellate court denied petitioner's motion for reconsideration.

*Exhibits 40, 41 to Return of Writ.* On May 2, 2007, the Ohio Supreme Court dismissed

petitioner's subsequent appeal. *State v. Holloman,* 113 Ohio St.3d 1490 (2007); *Exhibit 45 to*

*Return of Writ.* Additionally,

> [i]n September 2007, appellant filed in the trial court a "Motion
> to Correct a Void Sentence Based Upon The Trial Court's
> Disregard of a Statutory Sentencing Requirements [sic]." The
> trial court denied appellant's motion, finding that it lacked
> jurisdiction to correct the valid sentence it had imposed.

*State v. Holloman*, 2008 WL 2250226 (Ohio App. 10th Dist. June 3, 2008). Petitioner filed a

timely appeal, in which he asserted the following assignments of error:

> [I]. The appellant's sentence is contrary to law, and the trial
> court committed plain error under Crim.R. 52(B) because the
> trial court failed to fulfill its statutory sentencing duty of
> engaging in a consistency analysis before imposing a sentence
> on appellant, thereby violating appellant's statutory rights
> under R.C.§2929.11(B) and his rights under [the] Due Process
> and Equal [Protection] [C]lauses of the Ohio and United States
> Constitutions.

[II]. The trial court erred, and abused it discretion, when the court denied appellant's motion to correct a void sentence based upon the trial court's disregard of the statutory sentencing requirement of R.C.§ 2929.11(B).

*See id.* On June 3, 2008, the appellate court affirmed the trial court's judgment. *Id.* Petitioner apparently did not file an appeal to the Ohio Supreme Court.

On May 8, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Martin L. Holloman rights under the Sixth Amendment and principles decided in the United States Supreme Court's decision in *Apprendi v. New Jersey* (2000), 530 U.S. 466... , and *Blakely v. Washington* (2004), 542 U.S. 296... were violated when the sentencing judge made judicial findings that gives the court's reasons for selecting a six year sentence pursuant to R.C. 2929.11(B)(2). Thus, rendering the imposed sentence unconstitutional and contrary to the clearly established federal law set forth in *Apprendi* and *Blakely* and the Ohio Supreme Court decision in *State v. Foster, supra.*

2. Martin L. Holloman was deprived of his constitutional right under the Sixth and Fourteenth Amendments and the United States Supreme Court's principles in the decisions set forth in *Douglas v. California* (1963), 469 U.S. 372, and *Evitts v. Lucey* (1985), 469 U.S. 387, when his appointed appellate counsel omitted the meritorious sentencing issue concerning the sentencing judge use of R.C. 2929.19(B)(2) unconstitutional judicial fact findings to justify the court's reasons for selecting and imposing a six year sentence on the Petitioner that was in violation of the clearly established Federal Law set forth in *Apprendi v. New Jersey...* and *Blakely v. Washington....*

3. Martin L. Holloman due process right under the Sixth and Fourteenth Amendments and the United States Supreme Court's decision in *Brady v. Maryland* (1963), 373 U.S. 83... was

violated when the state trial court abused its discretion by denying post-conviction relief claim of prosecutorial misconduct asserting failure to disclose exculpatory or impeachment evidence to his defense without first conducting an evidentiary hearing as required by R.C. 2953.21(E).

4. Martin L. Holloman was deprived of his constitutional right under the Sixth and Fourteenth Amendments and the United States Supreme Court's decision in *Brady v. Maryland* (1963), 373 U.S. 83... when the state appellate court in its opinion ruled the State did not violate *Brady* in regards to the late disclosure of the first page of the EMS Report at trial that was favorable evidence and appellant failed to show that the second page of the EMS Report was material and, therefore, did not provide evidence sufficient to show the State violated the dictates of *Brady*.

5. Martin L. Holloman was deprived of his constitutional right under the Sixth and Fourteenth Amendments to the United States Constitution when the state appellate court denied his claims of ineffective assistance of appellate counsel raised in the application for reopening pursuant to App.R. 26(B) that asserted: (1) appellate counsel failed to challenge the trial court's restitution order on direct appeal; (2) appellate counsel failed to raise the trial court's failure to comply with its sentencing statutory duty under R.C. 2929.11(B) consistency analysis to insure the impose[d] sentence was consistent with similar crime[s] by similar offenders; (3) appellate counsel failed to consult with him concerning the issues to raise on appeal.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state

and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which hem ay present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow

the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that his sentence violated *Blakely v. Washington, supra*. This claim, being readily apparent from the record, should have been raised on direct appeal, but was not. The trial court sentenced petitioner on December 5, 2005 -- *i.e.,* long after the United States Supreme Court's June 24, 2004, decision in *Blakely* but prior to the Ohio Supreme Court's February 27, 2006, decision in *State v. Foster*, 109 Ohio St.3d 1 (2006), invalidating portions of Ohio's sentencing statutes as unconstitutional under *Blakely.* However, petitioner raised his *Blakely* claim in the first instance on direct appeal to the Ohio Supreme Court. *See Exhibit 11 to Return of Writ.* Respondent contends that petitioner has thereby procedurally defaulted this claim, because the Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below. *See Mitts v. Bagley,* 2005 WL 2416929 (N.D. Ohio September 29, 2005), citing *Fornash v. Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)(citing *State v. Phillips*, 27 Ohio St.2d 294, 302 (1971)). However, the Ohio Supreme Court has considered *Blakely* claims raised for the first time in that court. *See, e.g., Ohio v. Buchanan*, 2006 WL 3059911 (Ohio App. 7 Dist. October 26, 2006). Further, as cause for his failure to raise his *Blakely* claim in the Ohio Court of Appeals, petitioner asserts the ineffective assistance of appellate counsel, which claim he also raises in claim two of his habeas corpus petition filed in this Court.

Respondent contends that petitioner has likewise procedurally defaulted his claim

13

of ineffective assistance of appellate counsel, because petitioner failed to raise that claim in his Rule 26(B) application. *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000)(the ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted.) This Court does not agree. Although petitioner did not raise a claim of ineffective assistance of counsel based on his attorney's failure to raise a claim under *Blakely* in Rule 26(B) proceedings, he presented this claim on direct appeal to the Ohio Supreme Court. *See Exhibit 11 to Return of Writ*. This Court concludes that petitioner thereby preserved this claim for federal habeas corpus review. *See State v. Murnahan*, 63 Ohio St.3d 60, 65 (1992), *superseded by rule as stated in State v. Davis,* 119 Ohio St.3d 442 (2008)(holding that *res judicata* did not bar consideration of a claim of ineffective assistance of appellate counsel in Rule 26(B) proceedings where, as here, that claim had not been adjudicated on the merits by the Ohio Supreme Court.)

The record, however, reflects that petitioner's *Blakely* claim and his claim of ineffective assistance of counsel lack merit.

Because the state courts did not address the merits of these claims, this Court will conduct a de *novo* review of those claims. *See Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005), citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

In *Blakely,* the United States Supreme Court applied the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt"):

> [T]he "statutory maximum" ... is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*.... In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment" and the judge exceeds his proper authority.

*Blakely v. Washington, supra,* 542 U.S. at 303-304 (emphasis in original)(citations omitted).

In *State v. Foster, supra,* the Ohio Supreme Court subsequently concluded that imposition of provisions of Ohio's sentencing statues requiring judicial fact finding , including those required prior to imposition of non-minimum sentences under O.R.C. §2929.14, violated *Blakely*. In fashioning a remedy for this constitutional violation, the Ohio Supreme Court excised the unconstitutional provisions of Ohio's sentencing statutes in accordance with the Supreme Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005)(severing and excising unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety), and remanded all cases pending on direct appeal for re-sentencing.[1]

Here, the trial court imposed six years incarceration on the aggravated burglary charge, which constituted a first degree felony. *Exhibits 1, 2 to Return of Writ.* The conviction was punishable by three to ten years incarceration. *See* O.R.C. §2929.14(A)(1).

---

[1] Petitioner's appeal was pending on direct review at the time *Foster* was decided.

The trial court justified imposition of its sentence based on the jury's verdict of guilt, petitioner's prior record and facts that had been admitted by petitioner:

> COURT: Mr. Holloman, I'll be honest with you. The Bell Center is one of my favorite places. I've been out there to lunch. I have seen the facility. It's a wonderful facility. They do good, wonderful work, but one of the things they talk about in this facility is commitment. For you to walk away on a whim for a relationship or school troubles me considerably.
>
> The other thing... you kicked the door in. Not open, but down and on the ground. That's just not your normal feat. That's somebody who is extremely angry. I think that's very indicative of how you went and treated that situation.
>
> I don't find that the minimum is appropriate here based upon your record. I also, upon the nature, the violent nature of the act of kicking the door in, going through the house that that's just not in my repertoire of telling somebody I love you by kicking in the door. With that in mind, it will be a six year term[.]

*Sentencing Transcript, at 16-17, Exhibit 61 to Return of Writ.* At trial, petitioner admitted he kicked the door in, *Transcript, Volume II*, at 130, 159-60, and that he left the Bell Center prior to actually completing the program, even though it resulted in a warrant being issued by his probation officer. *Id.*, at 116-119; 121-124; 126; 150. The trial court's consideration of these facts was permissible under *Blakely.*

Therefore, petitioner's claim of ineffective assistance of counsel, based on his attorney's failure to raise a *Blakely* issue, likewise lacks merit.

The Sixth Amendment guarantees the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim

of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

> To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697, 104 S.Ct. 2052. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other.

*Id.,* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and

focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Because petitioner's *Blakely* claim is without merit, petitioner cannot establish prejudice from counsel's failure to raise the issue.

Claims one and two are without merit.

## CLAIMS THREE AND FOUR

In claim three, petitioner asserts that he was denied due process because the state courts rejected his claim of prosecutorial misconduct, raised in post conviction proceedings, without first conducting an evidentiary hearing. In his related claim four, petitioner asserts that he was denied a fair trial because the prosecutor failed to disclose exculpatory impeachment evidence, *i.e.*, the second page of the EMS report.

Claim three fails to present an issue appropriate for federal habeas corpus relief.

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); see also *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due

Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby,* 794 F.2d at 247. "Though the *ultimate* goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell,* 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings can not [ *sic* ] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007).

Additionally, the state appellate court rejected petitioner's claim of prosecutorial misconduct as follows:

Appellant claims that the State failed to disclose material evidence in violation of *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194. Specifically, appellant claims that the State withheld a page of a report filled out by the paramedics who treated the victim. Appellant concedes that he received the first page of the report during trial but maintains that he did not receive the second page of the report. Appellant did not attach the second page of the report to his petition for post-conviction relief.

The suppression by the prosecution of evidence favorable to the accused upon request violates due process where the

evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady.* In order to establish a *Brady* violation, a defendant must establish three elements: (1) that the prosecution withheld evidence, (2) that the defense was not aware of the evidence, and (3) that the evidence withheld was material. *State v. Johnston*, (1988), 39 Ohio St.3d 48, paragraph four of the syllabus; *United States v. Agurs,* (1976), 427 U.S. 97, 103, 96 S.Ct. 2392. Appellant has not presented evidence demonstrating substantive grounds for relief under *Brady.*

We first note that the State did not violate *Brady* in regards to the first page of the report. Appellant concedes that the State disclosed the first page of the report during trial. "*Brady* is not violated when disclosure [of evidence] occurs during trial, even when disclosure surprises the defendant with previously undisclosed evidence." *State v. Iacona* (2001), 93 Ohio St.3d 83, 100.

As his claim relates to the second page of the report, appellant has not demonstrated that the second page of the report was material. The withholding of exculpatory or impeachment evidence constitutes a *Brady* violation only if it is "material." *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375. The United States Supreme Court has noted that the "touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley* (1995), 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, quoting *Bagley,* at 678.

Appellant did not submit the second page of the report with his petition. Without evidence indicating the contents of that page, appellant failed to show that the page was material and, therefore, did not provide evidence sufficient to show the State violated the dictates of *Brady. See State v. Tisdale,* Montgomery

App. No. 19346, 2003-Ohio-4209, at ¶ 35-36 (no *Brady* violation for State's failure to disclose audiotape where defendant did not provide contents of audiotape); *State v. Wogenstahl,* (June 12, 1998), Hamilton App. No. C-970238 (no *Brady* violation where defendant did not provide evidence of reports the State allegedly failed to disclose); *State v. Young,* Franklin App. No. 05AP-641, 2006-Ohio-1165, at ¶ 15 (no Brady violation where defendant fails to submit evidence indicating contents of alleged material evidence).

Because appellant failed to demonstrate substantive grounds for relief under *Brady,* the trial court did not err by denying this claim for relief without a hearing.

*State v. Holloman, supra*, 2006 WL 3743105. The state trial court noted, in its dismissal of petitioner's post conviction petition, that

[d]uring the trial, the State was given a medics report, which they immediately produced to the defendant. This report was made available and the Defendant had it for his use during cross examination. The Defendant made no request for a continuance and since there were no objections raised at that time, the court continued to proceed with the trial.

*Exhibit 29 to Return of Writ*.

The findings of the state appellate court are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Further, a federal habeas court cannot grant relief unless the state court contravenes or unreasonably applies federal law or issues a decision based upon an

unreasonable determination of the facts:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has failed to meet this standard here. *See Williams v. Taylor, supra.*

The report referred to by petitioner indicates that paramedics were called as the result of an alleged assault, and the alleged victim was complaining of cheek pain. *See attachments to Exhibit 31 to Return of Writ* (petitioner's merit brief). The report also indicates

that the alleged victim told paramedics "a past boyfriend broke her door in[,] came in and

hit her twice on the face." "No bruising yet teeth all [intact] no bleeding." "Left in care of

CPD." *Id.* Petitioner cross examined firefighter and paramedic Terone Gordon, who

responded to the scene of the incident, on the fact that the report did not indicate that the

alleged victim had noticeable bruising or bleeding. *Transcript, Vol. I*, at 74. However,

Gordon had not written the report. *See id.*

In *Brady v. Maryland,* 373 U.S. 83 (1963), the United States Supreme Court held that

> the suppression by the prosecution of evidence favorable to an
> accused upon request violates due process where the evidence
> is material either to guilt or to punishment, irrespective of the
> good faith or bad faith of the prosecution.

*Id.,* at 86. Evidence is material

> [i]f there is a reasonable probability that, had the evidence been
> disclosed to the defense, the result of the proceeding would
> have been different.

*United States v. Bagley,* 473 U.S. at 682.

> [T]here is never a real "*Brady* violation" unless the
> nondisclosure was so serious that there is a reasonable
> probability that the suppressed evidence would have produced
> a different verdict.

*Strickler v. Greene*, 527 U.S. 263, 281 (1999). "Impeachment evidence, as well as exculpatory

evidence, falls within the *Brady* rule." *O'Guinn v. Dutton*, 88 F.3d 1409, 1418 (6th Cir. 1996),

citing *United States v. Bagley, supra.* "In the absence of prejudice, even assuming a violation

of *Brady,* reversal is not required." *United States v. Jones*, 766 F.2d 994, 998 n. 1 (6th Cir. 1985), citing United *States v. Campagnuolo*, 592 F.2d 852, 861 & n. 9 (5th Cir.1979). Additionally,

> the "mere possibility" that the evidence might have aided the defense or might have affected the outcome of the trial does not satisfy the materiality element. *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Also, a belated disclosure of evidence violates *Brady* only where a petitioner can show that the delay itself caused prejudice. *O'Hara v. Brigano,* 499 F.3d 492, 502 (6th Cir. 2007).

*Overbay v. Carlton*, 2008 WL 4682802 (E.D. Tenn. October 21, 2008).

Upon review of the record, petitioner has failed to show that the apparently belated disclosure of the EMS report prejudiced him, particularly since he could have requested a continuance of the trial, if necessary, but did not, *see Exhibit 29 to Return of Writ*, and in view of the testimony by other witnesses, summarized in the decision of the state appellate court, regarding whether or not the alleged victim showed any physical signs that she had been assaulted. Further, the record lacks support for petitioner's claim that page two of that report would have assisted the defense.

Claims three and four are without merit.

## CLAIM FIVE

In claim five, petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to challenge on direct appeal the trial court's restitution order and the trial court's failure to conduct a consistency analysis under O.R.C. §2929.11(B) to ensure that petitioner's sentence was consistent with similar sentences

imposed on crimes committed in similar cases; and because his attorney failed to consult

with him regarding the issues to be raised on direct appeal.

The state appellate court rejected petitioner's claim of ineffective assistance of

appellate counsel in relevant part as follows:

> Appellant[]... asserts that his appellate counsel failed to challenge the trial court's restitution order. Appellant contends that insufficient evidence supports that order and counsel should have challenged it for that reason. We disagree.

> At sentencing, Teresa Johnson told the trial court that appellant owed her $1,200 for various items that he stole, as well as for their "Manhattan mini vacation." (Tr. at 17.) When asked to subtract the mini-vacation cost, as that is not an appropriate item for recompense, Johnson responded that appellant owed her restitution for damage to her homes's door, as well as money and an "expensive pin" taken from her purse. (Tr. at 17.) This is sufficient to support the trial court's restitution order. Thus, we are not persuaded that the outcome of the appeal would have been different if this particular argument had been raised in the trial court.

> Appellant's remaining assignments of error are grounded in a misconception that the trial court should have conducted a "consistency of sentencing" analysis before it imposed its sentence. Appellant is correct, as an abstract proposition of law, that courts should consider whether a sentence is "consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). However, no provision exists in that statute to require trial courts to conduct a formal, explicit "consistency of sentencing" analysis before it imposes a sentence. Furthermore, although consistency is an issue to be considered during sentencing, it is not the only issue. Courts must also consider the "overriding purposes of felony sentencing," which include protecting the public from future crime and punishment. R.C. 2929.11(A) and (B). To achieve those purposes, courts must

consider "incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."  R.C. 2929.11(A).

In light of the particular facts and circumstances of this case ..., we are not that persuaded that the trial court erred in weighing these issues before it arrived at a sentence.

Appellant's application also advances various other "claims" to the effect that appellate counsel was ineffective.  We find no merit in those claims, however.  First, appellant asserts that appellate counsel should have consulted with him concerning issues to raise on appeal.  Appellant, however, fails to explain exactly how he was prejudiced and we will not speculate as to that issue.  Appellant also claims that appellate counsel failed to argue that the trial court failed to conduct a "consistency of sentencing analysis."  As we note above, however, we are not persuaded that the trial court erred in balancing sentencing consistency with all of the other factors it must consider.  *See* R.C. 2929.11(A) and (B).  Finally, appellant claims that he was prejudiced due to counsel "campaigning" for a position on the court of appeals.  Again, appellant makes no specific argument as to how he was prejudiced.  This is insufficient.  Fur purposes of *Strickland* analysis, prejudice will not be implied.  Rather, prejudice must be affirmatively established.....

Therefore, we are not persuaded that the outcome of this appeal would have been different if these additional assignments of error or claims had been raised during appellant's first appeal of right.  Thus, appellant has not established a genuine issue as to whether he was deprived of effective assistance of appellate counsel[.]

Exhibit 19 to Return of Writ.[2]  Again, upon review of the entire record, the Court is not

---

[2]  In post conviction proceedings, the state appellate court rejected petitioner's argument that his sentence was improperly imposed under State law as follows:

[A]ppellant's consistency claim fails on the merits. Appellant contends that the consistency principle is one of the most

important policy statements included in Am.Sub. No. 2 ("S.B.2") and that the sentencing statutes enacted pursuant to that legislation require trial courts to impose sentences that are consistent with sentences for similar offenses by similar offenders. He claims that S.B. 2 and R.C. 2929.11(B) require trial courts to address the issue of consistency as part of the sentencing. Indeed, appellant maintains that trial courts are required to conduct a consistency analysis on the record at the sentencing hearing, explain the consistency analysis in its sentencing entry, or both.

R.C. 2929.11 sets forth the principles and purposes of Ohio's felony sentencing laws as follows:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with the sentences imposed for similar crimes committed by similar offenders.

While R.C. 2929.11 states the objectives of felony sentencing, R.C. 2929.12 identifies a nonexhaustive list of factors relating to the seriousness of the offense and recidivism of the offender for the court to consider in imposing a sentence to meet those objectives. It is well-settled that these two sections do not mandate judicial fact-finding. *State v. Samuels*, Cuyahoga App. No. 88610, 2007-Ohio-3904, at ¶ 15; *State v. Price,* Geauga App. No.2007-G-2785, 2008-Ohio-1134,

¶ 33. Rather, a court is merely to consider the statutory factors set forth in these two sections prior to sentencing. *Price,* supra. "A trial court possesses 'broad discretion to determine the most effective way to comply with the purposes and principles of sentencing within the statutory guidelines.' " *Id.* at ¶ 31, quoting *State v. Smith* (June 11, 1999), Portage App. No. 98-P-0018.

Although "R.C. 2929.11(B) requires consistency when applying Ohio's sentencing guidelines, * * * sentencing consistency is not derived from the trial court's comparison of the current case to prior sentences for similar offenders and similar offenses." *State v. Kalish,* Lake App. No.2006-L-093, 2007-Ohio-3850, at ¶ 18, citing *State v. Spellman,* 160 Ohio App.3d 718, 2005-Ohio-2065, at ¶ 12. Rather, the trial court's proper application of the statutory sentencing guidelines ensures consistency. *Id.,* citing *State v. Swiderski,* Lake App. No.2004-L-112, 2005-Ohio-6705, at ¶ 58; *State v. Quine,* Summit App. No. 20968, 2002-Ohio-6987, at ¶ 12. Accordingly, in order to demonstrate that a sentence is inconsistent, a defendant must show that the trial court failed to properly consider the statutory factors and guidelines. *Price,* supra, at ¶ 33; *Kalish,* supra.

Appellant fails to meet this burden. Our review of the record reveals that the trial court carefully considered the statutory guidelines before sentencing appellant.

At the sentencing hearing, the court permitted the prosecutor, the victim, defense counsel and appellant to address the court. To that end, the prosecutor noted that appellant had a "fairly extensive record" dating back to 1989, had spent time in prison, and was on parole for robbery involving violence at the time he committed the instant offense. The victim chronicled the physical, mental, and emotional trauma she suffered as a result of appellant's actions; indeed, the victim recounted that appellant kicked in her door to gain access to her apartment and hit her in the face, causing her to injure her hip when she fell into a table. The victim further stated that the violence she endured

during her personal relationship with appellant negatively affected her ability to form healthy relationships with other men. Defense counsel asserted that appellant's actions arose out of his despair over his failed relationship with the victim, whom he met at a function for persons recovering from drug and alcohol addiction. Defense counsel further noted that at the time of the incident, appellant was within two weeks of completing a six-month drug and alcohol treatment program at the Bell Center. While appellant apologized for his actions, he blamed them on his failed relationship with the victim and his drug addiction.

The trial court, noting its familiarity with the Bell Center's treatment program, stated that "[f]or you to walk away on a whim for a relationship or school troubles me severely." (Dec. 5, 2005 Tr. 16.) The trial court also noted that appellant kicked in the victim's door, "[n]ot open, but down and on the ground"; the court found this behavior to be indicative of a person "who is extremely angry." *Id.* The court further stated, "I don't find that the minimum is appropriate here based upon your record. I also, upon the nature, the violent nature of the act of kicking the door in, going through the house that that's just not in my repertoire of telling somebody I love you by kicking in the door. With that in mind, it will be a six year term * * *." *Id.* at 16-17.

In addition to its statements at the sentencing hearing, the trial court considered the seriousness and recidivism factors of R.C. 2929.12 in its felony sentencing worksheet. There, the trial court found, pursuant to R.C. 2929.12(B)(6), that appellant's conduct was more serious than conduct normally constituting the offense because his relationship with the victim facilitated the offense. In addition, the court found, pursuant to R.C. 2929.12(D)(2), (4), and (5), that recidivism was likely because appellant had a prior history of criminal convictions, demonstrated a pattern of drug or alcohol abuse related to the offense, and exhibited no genuine remorse for the offense, respectively.

Moreover, in its sentencing entry, the trial court expressly

stated that it "considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12" and "weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14." This court has found that such a notation in the trial court's sentencing entry is sufficient to satisfy the consistency requirement in R.C. 2929.11(B). *State v. Todd*, Franklin App. No. 06AP-1208, 2007-Ohio-4307, at ¶ 16, citing *State v. Daniel*, Franklin App. No. 05AP-564, 2006-Ohio-4627, at ¶ 50. *See, also, State v. Battle,* Franklin App. No. 06AP-863, 2007-Ohio-1845, at ¶ 26.

As noted previously, appellant's six-year sentence is within the statutory range of penalties for the offense for which appellant was convicted. Moreover, the record evidence indicates that the trial court properly applied and considered the appropriate statutory sentencing factors prior to imposing appellant's sentence. The court's sentencing thus met the consistency requirement of R.C. 2929.11(B).

Appellant cites, for the first time, cases from other districts he claims are similar in facts and offenses to his, but where the trial courts imposed less severe sentences. This court has refused to engage in the sort of comparison urged by appellant. Indeed, in *Battle, supra*, this court stated that consistency "does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into consideration a trial court's discretion to weigh relevant statutory factors." *Id.* at ¶ 24, quoting *State v. King*, Muskingum App. No. CT06-0020, 2006-Ohio-6566, at ¶ 23, citing *State v. Ryan,* Hamilton App. No. C-020283, 2003-Ohio-1188, at ¶ 10. A reviewing court's charge "is to examine the available data, not to determine if the trial court has imposed a sentence that is in lockstep with others, but to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although offenses may be similar, distinguishing factors may justify dissimilar sentences." *Id.*

persuaded upon review of the entire record, this Court is not persuaded that the Ohio Court of Appeals unreasonably applied or contravened *Strickland*, or that its decision was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. §2254(d), (e). Federal habeas relief is therefore unwarranted on petitioner's claim of ineffective assistance of counsel. *See Williams v. Taylor, supra*.

Petitioner complains that his attorney failed to send him a copy of the appellate brief prior to filing it, and failed to consult with him regarding the issues to be raised on direct

---

As noted by appellee, comparisons with cases from other districts, or even our own district, do not account for the numerous variables that exist regarding appellant's circumstances and criminal history or the crime he committed, or both, that necessarily factored into the trial court's sentencing decision. Moreover, even if appellant could demonstrate inconsistency under R .C. 2929.11(B) simply by comparing his case to other cases, appellant neither offered these cases to the trial court at sentencing nor supplemented the record with them and argued the issue in his direct appeal. *Lawson, supra*, at ¶ 16-20.

Finally, we note that a criminal defendant has no substantive right to a particular sentence within the statutorily-authorized range. *State v. Tewolde*, Franklin App. No. 06AP-764, 2007-Ohio-2218, at ¶ 13, citing *State v. Templeton*, Richland App. No.2006-CA-33, 2007-Ohio-1148, at ¶ 98, citing *Gardener v. Florida* (1977), 430 U.S. 349, 358, 97 S.Ct. 1197. "As noted by the court in *Templeton*, each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes." *Id.*

*State v. Holloman, supra*, 2008 WL 2250226.

appeal. Specifically, petitioner asserts that his attorney should have raised on appeal a claim that the trial court improperly ordered him to pay $300.00 restitution, and failed to conduct a consistency analysis to determine whether petitioner's sentence was consistent with other sentences imposed in similar cases. Finally, petitioner alleges that his appellate attorney suffered a conflict of interest because he was campaigning for judge on Ohio's Tenth District Court of Appeals and because, as a former judge, he had affirmed a sentence imposed on an aggravated burglary conviction. *See Exhibit 14 to Return of Writ*. Petitioner has a Sixth Amendment right to conflict free counsel. *See Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006), citing *Smith v. Anderson*, 689 F.2d 59, 62-63 (6th Cir. 1982).

> Defense attorneys owe their clients a duty of loyalty, including the duty to avoid conflicts of interest. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing to *Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). However, a claim of a conflict of interest, by itself, is insufficient to justify reversal of a conviction. *Reedus v. Stegall*, 197 F.Supp.2d 767, 782 (E.D.Mich. 2001) (citing to *United States v. Hall,* 200 F.3d 962, 966 (6th Cir. 2000) (additional citations omitted). Instead, a habeas petitioner must demonstrate "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Reedus*, 197 F.Supp.2d at 782 (citing to *Strickland,* 466 U.S. at 692, 104 S.Ct.2052); *See also Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1244, n. 5, 152 L.Ed.2d 291 (2002)(actual conflict of interest, for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance).

*Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005). Prejudice is presumed where a defendant demonstrates that an actual conflict of interest that compromised the attorney's ability to advocate the defendant's interests. *Id.*, citing *Olden v. United States*, 224 F.3d 561, 565 (6th

Cir. 2000); *see also Gillard v. Mitchell, supra*, 445 F.3d at 890 (citations omitted). However,

> [t]he presumed prejudice standard for ineffectiveness claims based on a conflict of interest detailed in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), is inapplicable to cases of successive representations. *Lordi,* 384 F.3d at 193. *See also Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir.2002)(refusing to extend *Sullivan* to an ineffective assistance of counsel claim based on an attorney's conflict of interest arising from anything other than joint representation), cert. denied, 540 U.S. 971, 124 S.Ct. 441, 157 L.Ed.2d 319 (2003); *Benge v. Johnson*, 312 F.Supp.2d 978, 994 (S.D.Ohio 2004)(refusing to apply the *Sullivan* standard outside the concurrent joint representation context).

*Whiting v. Burt, supra,* 395 F.3d at 618. A trial court must make an inquiry into an alleged conflict "where it 'knows or reasonably should know that a particular conflict exists;'" not "'when the trial court is aware of a vague, unspecified possibility of conflict, such as that which 'inheres in almost every instance of multiple representation,'" *Gillard v. Mitchell, supra,* 445 F.3d at 892, quoting *Mickens,* 535 U.S. at 168-69; *see also Moss v. United States,* 323 F.3d 445, 470-71 (6th Cir. 2003). The record in this case simply fails to reflect an actual conflict of interest, nor was the trial court constitutionally required to inquire further about the possibility of a conflict based on the fact that petitioner's attorney was campaigning for judge or had previously served as a judge in an aggravated burglary case. *See Moss v. United States, supra.*

Further, the record indicates it was Thomas M. Tyack, Esq., of whom petitioner requested a copy of his appellate brief rather than petitioner's actual counsel, G. Gary Tyack, Esq., before the brief was filed. Gary Tyack advised petitioner, in a letter dated

March 6, 2006, that his brother, Thomas Tyack, did not forward petitioner's request until

after the appellate brief had been filed. *See attachments to Exhibit 14 to Return of Writ.*

Petitioner's appellate attorney further indicated:

> There are only the two assignments of error because there are
> only two errors in the entire transcript which conceivably
> could have affected the outcome....
>
> You really did confess to the crime and to all the elements of a
> burglary of the second degree at the time that you represented
> yourself and at the time you gave opening statement. The only
> issue which really can be pursued at this point in time based
> upon your own testimony and based upon the testimony given
> at trial by the other witnesses is whether you physically
> assaulted or threatened to assault your friend. I have begun to
> develop this issue and will develop it more in the reply brief.
> If you have specific arguments you want developed in more
> detail in that brief, please fell free to write me back.

*See id.* Therefore, the record fails to reflect that appellate counsel did not consult with

petitioner.[3] Further, as discussed by the state appellate court, petitioner has failed to

establish that he was prejudiced by his attorney's failure to raise any additional issue on

direct appeal. For the reasons detailed by the state appellate court, petitioner's claims that

the trial court improperly ordered $300.00 restitution, or failed to conduct a consistency

analysis lack merit. The record also fails to reflect that the state appellate court's decision

rejecting petitioner's claim of ineffective assistance of appellate counsel was so

---

[3] G. Gary Tyack's letter also indicates that he "had the benefit of" a letter from
petitioner's mother, containing his notes about the problems he saw with the evidence
prior to writing his appellate brief. *See Attachments to Exhibit 14 to Return of Writ.*
However, petitioner states that his mother is deceased and that his attorney's statement
is false. *See id.*

unreasonable as to justify federal habeas corpus relief. *See* 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.*

Claim five is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

November 30, 2009                                     _s/Norah McCann King_
                                                      Norah McCann King

United States Magistrate Judge